Good morning, Your Honors. If it please the Court, Gretchen Fusilier on behalf of Mr. Aranda. Your Honors, I would like to, first of all, bring to the Court's attention that Mr. Aranda's opening brief, reply brief, as well as the government's answering brief and excerpts of record have been filed under seal in this appeal. They also were, well the opening briefs weren't relevant to the District Court, but all documents that were sealed in the District Court, which are part of the excerpts of record, remain sealed in this appeal. Consequently, I would indicate that all of the sensitive areas that are relevant and critical to this appeal have been fully briefed in our briefs, and I would like to be circumspect about referring to any of those sealed documents or contents in those documents during oral arguments. Be as circumspect as you like. I saw a gentleman standing next to you a second ago. Good morning, Your Honors. May it please the Court, Mark Ebert for Mr. Covarrubias. I believe Ms. Fusilier and I will be sharing our 15 minutes equally, 7 1⁄2 minutes each. And up to the Court, who goes first? It's up to you. Okay, thank you, Your Honors. Again, for the record, Mark Ebert for Mr. Covarrubias. May it please the Court. Since I only have 7 1⁄2 minutes and I would like to save time for rebuttal and mostly for questions, I'm going to be very brief. Mr. Covarrubias told the Court that he entered his plea because he was pressured to do so, that he was made promises by his attorney about the length of the sentence that were not in the record, that he was innocent of some of the things that he pled guilty to, and that he only did it to avoid involving his family and other inmates. I don't think there's any doubt that under Ninth Circuit law that these reasons, if true, would provide several fair and just reasons for withdrawing the plea. Innocence is one factor that this Court has repeatedly recognized and so on. But the District Court only gave two reasons for denying the motion to withdraw the plea. The first was it appears to be that the colloquy was adequate. That's certainly implied by the fact that he simply re-read it and said this was extensive. But, number one, that's not true because at least four or five items, as we say in our brief, were left out or, in one case, misstated, and that misstatement was the consecutive versus concurrent nature of the 924C sentence. And, secondly, and also even if the colloquy was adequate, that is not a ground for finding that there's no fair and just reason for withdrawing the plea. It's a completely separate reason. What is a fair and just reason, though? The fair and just reasons were that, number one, he was pressured into entering his guilty plea. That's his claim. But as far as the record, it indicates that he was not pressured. Doesn't he answer that quite clearly? No. Excuse me. I understand that the Rule 11 colloquy said that. But then Mr. Covarrubias, in moving to withdraw his plea, provided information outside the record that he was pressured, that he was not telling the truth. Again, it was his claim. Does the judge have to believe that, though? I mean, if the bare claim could cause the withdrawal of a plea in every case, then there would be nothing really for the district judge to do other than grant them all. If someone comes in and says, oh, I had these, even though I acknowledged here in court that I could be imprisoned for life, I didn't really mean it, I didn't believe it, what is the judge's role when faced with that? The judge's role, first of all, Your Honor, is to inquire and to make findings and to weigh the different factors that this court set forth. For example, in the Garcia case, whether innocence is claimed, how long of a delay there was between the entry of the plea and the motion to withdraw, both of which favor Mr. Covarrubias. Staying with one point at a time, you claim that he was pressured. Yes. All right. Now, the record is pretty clear that at least during the colloquy he didn't feel he was pressured. He said he wasn't pressured, yes. Yes. And later on he claims he was, as Judge Graper points out. Why would you believe that? I mean, this is during a course of picking a jury that he says, well, I better plea and get that life sentence. Instead of the death penalty. Right. You're right. Actually, I would submit that the fact that he is moving to withdraw a plea, which could lead to him getting the death penalty, is one factor in favor of leaving it. Well, his burden is to show that there's a reasonable probability that he actually would not have pleaded guilty. And the fact that he faced the death penalty would seem to me to suggest that this might be sort of wishful thinking or regret on his part, but not necessarily rising to the level of believable that he really would not have pleaded guilty. Again, Your Honor, my problem with the district court and the reason I believe it abused its discretion is, number one, it made no inquiry to determine. It went back to the record. It certainly did. It basically says, the Rule 11 colloquy says what it says, but, you know, Mr. Corrubias is now saying. It's an evaluation of credibility as well. I'm sorry? It's an evaluation of credibility as well, is it not? Yes. And it was made without any fact-finding, without any weighing of the facts. You're saying the district court is required to have a fact-finding hearing because so many claims were pressured after the record is clear that he stated he was not pressured. Given the circumstances, let me tell you, being a district court judge, I go through this every day, and they all want to do something different once they get sentenced. But to evaluate his credibility and give him credit for that statement that he was pressured, I think defies logic or reason on this record.  I would still say that the court had everything it needed to make an inquiry. The defense lawyers. What inquiry would you make? I would ask the defense lawyers, is this true? I was asked in the colloquy. I'm sorry? I was asked during the colloquy at the plea. Not the things that Mr. Corrubias said at his motion to withdraw the plea were not. Who did he say pressured him? He said that, well, first of all, he just said he was pressured, that he was told by his lawyers that his family would get involved if he didn't take the plea. Was any of that false? Was any of what false? What you just said. I believe my clients. That's what he told the client. No, I mean, what the lawyer said, is that false? I mean, was it entirely possible that the family would get involved if it went to trial? Well, I think that there is a question about what it means to be involved, and Mr. Hernandez. I'm just trying to take the statement one at a time. He says, I plead guilty because the lawyer told me my family would get involved. What's wrong with saying that, even if it happened? It depends on what you mean by getting involved, Mr. Hernandez. Well, you're the one who said it, so. No, but Mr. Corrubias said it. The other thing he said is my lawyer pressured me. Yes. He said I was pressured. He said I was pressured. He also said that he was promised an 80-year sentence by his lawyer. He was promised or that the lawyer. The lawyer said he would get that for him on appeal. I understood that the lawyer told him this is possible, is you could get as low as eight years or something to that effect. My understanding is that he said he is a pellet lawyer and that he would get the sentence reduced to 80 years. For 80? 80. Well, how is, given the lifespan of most people being less than 80 years, how is that a material, even if that's true, if someone said to you, well, no, you're not going to get a life sentence. You're only going to get 80 years. I mean, how much of a difference is that? It makes a difference between the hope of getting out while he's still alive and no hope. He was 23. He had several years in already, and then with good time and so on, he would have been in his 80s by the end of that time. I have only 10 seconds left, so I'd like to have some conclusion. Thank you. Good morning, Your Honors. Gretchen Fusilier on behalf of Mr. Aranda. I would like to, excuse me, reserve two minutes for rebuttal. Mr. Aranda also shares an argument, as previous counsel indicated, requiring the open notice to Mr. Aranda during the Rule 11 colloquy prior to accepting his guilty plea. In Mr. Aranda's case, the court itself, the district court itself, acknowledged that there were problems with the colloquy at the time that Mr. Aranda moved to have his plea withdrawn. The district court indicated that because both the plea agreement and the colloquy indicated that his mandatory minimum of 10 years to be served on the 924C charge, the discharge of a gun during a crime, would be served concurrently when, in fact, the statute mandates that it be served consecutively. No doubt that's a mistake. I think we all agree about that. Now, the logic of the district judge was, well, you were told you were going to get 30 years. You understood you were going to get 30 years, and you did, in fact, get 30 years. So what's the problem? Well, he wasn't specifically advised how that's 30 years. In fact, he would have gotten 30 years had the 10-year mandatory minimum be served concurrently. It's a matter of how it is served. I don't understand what you mean. He was told he was going to get 30 years, and he got 30 years, and I don't understand what difference it would make. Well, he was not advised, as I recall the colloquy during the Rule 11, that he would be sentenced to 30 years. Well, regardless of whether he was advised of that at the time, it was clear in his mind he was going to get 30 years, wasn't it? No, I would not agree with that statement, Your Honor, for the reason that we don't know exactly what was said previous to the Rule 11 colloquy, and Rule 11 requires specifically that he be advised in open court what the consequences of his plea were. I'm looking at page 6 of the plea agreement. It says the total statutory mandatory minimum in this case is 30 years in that was read at the time in open court. Yes, I understand that, Your Honor. However, there was no inquiry how Mr. Aranda understood that mandatory minimum 30 years. He understood apparently from the language of the plea agreement that he would be sentenced to 20 years on various other counts that he pled guilty to. What was the substantial right here that was violated? The substantial right is the right to be free and not to serve more time than the agreement between himself and the government provided for. And he did not. He was not given a greater sentence. He is given a greater sentence if, in fact, he is serving 30 years as opposed to 20 years with a 10-year mandatory under the 924C being served concurrently with that 20-year term. I guess I'm still struggling with the same issue, even though there were imperfections in the plea colloquy. He was told that the statutory maximum was life in prison, and he was told explicitly the total statutory mandatory minimum sentence in this case is 30 years' imprisonment. I mean, I'm reading now from page 313. So he knew, and that was before the court went over everything else and said, are you still wanting to plead? So I guess the question is whether the district court was allowed to conclude that in spite of the imperfections it was clear to your client that he was going to receive a minimum of 30 years. I think the district court had a very clear obligation to inquire Mr. Aranda to determine that he understood that he would be serving 30 years as a mandatory minimum. However, there were other problems with the Rule 11, and as we indicated in our brief, he had been advised by his trial counsel that the government would make a motion for a 17-level downward departure and that he would receive no more than five to eight years, when in fact he received 360 years as a sentence. Are you talking about what heading? Yes, that's correct, Your Honor. I understand heading submitted a declaration, did he? He did submit a declaration. Well, then it's possible, but, you know, it's up to the judge. Isn't that basically what the status was? Well, the judge characterized Mr. Heading's statement as a professional judgment. And our position is, as we argued, a judgment must be grounded on specific facts. It was not impossible that the judge could have departed and given him eight years, right? That was within the realm of possibility. Well, the judge indicated that he had had previous cases where he had done so. This is Heading's assessment, you know, maybe I can get you eight years. That was not indicated that he had done so necessarily in this particular case, where 49 persons were indicted from the Vineland Boys street gang and promises were made by the government to Mr. Aranda previous to his guilty plea. These are circumstances which I believe creates an unusual and unique circumstance for Mr. Aranda. I see you. You wanted to reserve some time, and it looks like you're down to a minute. Yes, I reserve a minute. Thank you. Thank you. Excuse the delay. Good morning, Your Honor. Good morning. May it please the Court, Peter Hernandez on behalf of the United States. Let me begin with Defendant Covarrubias' appeal first. Five days into his death penalty case, Defendant Covarrubias avoided a death penalty trial and pled guilty to a life sentence, the life sentence that Judge Walter repeatedly advised him of, despite the error concerning the 924C count. He was repeatedly advised that he would be receiving a life sentence, that he would never be able to get out of prison. Defendant Covarrubias, knowing all that during the change of plea colloquy, answered the questions under oath truthfully and admitted the factual plea, admitted that no other promises were out there other than those set forth in the plea agreement. There's no question that Defendant Covarrubias wanted to plead. Therefore, his substantial rights weren't affected in this particular case. The error had nothing to do with his decision to avoid this death penalty case to go away. With regards to his motion to withdraw his guilty plea, the Defendant's four reasons were all addressed by Judge Walter. With regards to the unknown incident report that he says he never saw, that was one of the reasons why he wanted to plead guilty. Judge Walter said this was unrealistic given the fact that during the change of plea colloquy, there were various statements that were asked of Defendant Covarrubias regarding, and his counsel regarding the discovery. He didn't want to get his family involved was another reason. There was nothing in that particular record that he raised initially. His family may have been involved had he gone to trial, had he been found guilty, and had he been at the death qualified stage of the proceedings. His family may have been involved at that point in time. The fact that he now claimed that he was innocent, as the court noted earlier, it's clear based on the plea colloquy that that's contrary to the statements that he gave under oath. And it certainly wasn't a gross mischaracterization of his sentence. With regards to the 80 years that his attorney would seek for him on appeal, I believe, is the correct statement that the Defendant made at the motion to withdraw his guilty plea hearing. The Defendant comes and wants to withdraw his plea and says, my lawyer pressured me, twisted my arm, made me do it, overbore my will, whatever he says. What is the judge's obligation when faced with a claim like that? I think the judge's obligation is what Judge Walter did in this particular case, Your Honor. He went back to the plea colloquy, read the answers that the Defendant gave under oath, and the Defendant's questions that were posed concerning any promises, any questions. The reason I said what I said is because he's got my arm twisted behind my back. I guess following up on Judge Silverman's question, why wouldn't the judge have to have the lawyer under oath to say this claim is now being made? So is this really, you know, did you force him to answer that way earlier? Well, I understand the court's question. In this particular case, you know, the attorney said there's no merit to this motion, no merit to the basis for this motion, there's no merit to potentially that third factor, that Defendant is saying that he was pressured into pleading guilty because of this particular Defendant. The question becomes whether he was under oath. He wasn't under oath, but as an officer of the court, he's not necessarily going to misrepresent to the court that, you know, he did something that he's saying he didn't do. So I think in this particular case, Judge Walter and the defense attorney, you know, did respond to Judge Silverman's concerns. In our review of those factual findings by the district court judge, I reviewed for clear error, is that correct? The clear error under, you're right. So, Your Honor, based on everything at this point, with regards to Defendant Kouvaroubias, the district court's sentence and Mr. Kouvaroubias' conviction should stand in this particular case. Unless the court has any other questions, I'm going to move on to Defendant Arando. I have somewhat, just speaking for myself, I have somewhat more concerns about Mr. Arando's situation, in part because our standard of review is different because this, in his case, the issue that he's raising to us now, he did raise initially the errors in the Rule 11 colloquy, whereas with Mr. Kouvaroubias, he didn't. And so we have, his standard of review is more onerous for him. So, and the other difference, of course, is he's not trying to escape the death penalty. And the prediction of the lawyer is quite a bit more believable, just in the abstract here. So, as you talk about this, would you address those concerns? Sure, Your Honor, yes. With regards to Defendant Arando, I think he may not have, he may have raised it prior to being sentenced on the day of sentence or, I'm sorry, prior to being sentenced. He did raise it 60 months after he changed his predictability. So there is that timing aspect to it that should be taken into account with regards to whether or not, the reasons he says that this somehow affected his substantial rights should be analyzed. But it's the same analysis as Defendant Kouvaroubias' case, to some extent, Your Honor, because early on, this defendant sought to do the things that are set forth in the brief that's filed under seal. And when he realized that he had blown his opportunity to do so, because he refused to meet with individuals that he needed to meet with, when he refused to leave his cell for other meetings, he failed to do so. And he, by failing to do so, he had essentially breached his promise that's contained in the plea agreement. So there's no plain error in this particular case, again, Your Honor, because the defendant knew early on what he wanted to do. And that misadvisement that occurred with regards to Count 61 of the indictment didn't necessarily have an effect on whether or not the defendant wanted to plead guilty. Because in this case, it was clear he wanted to plead guilty. And he negotiated a plea agreement for a 30-year mandatory minimum sentence in which Judge Walter repeatedly advised them of. With regards to the other courts concerning the reasons for the withdrawal of the guilty plea, there were various reasons, you know, the breach of the promise, concerning the identity issue and the protection issue. And those have been fully addressed. But with regards to the gross mischaracterization of the potential sentence that the defendant was going to receive, Your Honor, there's two answers to that particular issue. One, there was no promise here. As the court has stated, there was an advisement, you may get this if you do the certain things you need to do, which eventually he didn't. Having said that, even if he had promised that, it is clear from my experience in this case that I've been involved in since day one, even before the case was filed, that it was certainly possible and very realistic in this particular case that this defendant, had he been, had he complied with his obligations that set forth in the plea agreement, would have potentially received such a sentence, given the nature of this case and given the information that was at stake and provided for. But for his breach of the plea agreement and breach of the conditions that he was supposed to honor, he didn't get that. But it's clear that there wouldn't necessarily have been a, there wasn't a mischaracterization of the potential sentence because in this particular case, as counsel said, a potential 17-level reduction was at stake or was discussed. I know for a fact there was more than a reduction of 17 levels for other defendants. So I don't necessarily think this was a mischaracterization, a gross mischaracterization by Mr. Heading of any potential sentence this particular defendant may have received. On that note, Your Honor, unless the Court has any questions, I will submit. Thank you, Mr. Hernandez. Thank you. Thank you, Your Honors. I don't know what I can say in 10 seconds, but I would like to say, first of all, that contrary to what Mr. Hernandez believes, the attorney for Mr. Covarrubias never addressed the allegations that Mr. Covarrubias made. He was not asked. He was not given an opportunity to do so. Secondly, I believe It is true, isn't it, that the judge said to the lawyer, are you going to make a motion to withdraw? And he says, no, there's no basis for it. He says, in my opinion, there is not a legal basis for it. This is for Mr. Covarrubias to say. But again The judge is there. I mean, he knows what the story is. He knows it's a death case. He knows He knows that, but he hasn't heard from the defendant yet as to what the reasons are. Well, you say, no, the defendant's told him, I don't want to get my family involved. There's all this other stuff that he's He's just saying that happened after the attorney made that statement. He never responded to the specific I'm talking about at the time he makes his ruling. He has all this He has the whole gestalt of what's happened. Yes. Yes. Are you suggesting he should go back and ask the lawyer again after he hears the petition by the defendant? I think he should explore the facts. I think he should find out if it's true. Should he go back and ask the same question over again? No, he didn't ask that question. The lawyer was never asked to respond. Did you pressure him? He's never asked to respond. Did you promise him an 80-year sentence? But he found no legal basis to pursue a motion to withdraw. He said that at the very beginning, yes. Regardless of when he said it, he did say it. The court had that before. He did say it, but that does not relieve the trial court of its obligation to explore the facts and to weigh the legal factors that this court has set forth in Garcia. So in your opinion, any time the defendant wants to withdraw a plea, the court has to have a hearing? Regardless of whether there's a basis for it or not. Well, but that's what the hearing is to determine, Your Honor. And also I think that in virtually all of the cases that we cited, both the government and myself, there was, in fact, a hearing. There was, in fact, a determination of the facts. The judge did explore it. There are occasions where a hearing is necessary, but there are occasions when it's not necessary. All right. Thank you, Your Honor. Thank you very much. The case does start. You just submit it. We're going to take a 10-minute recess, and we'll start again at about 10. I didn't intend to, but if you'd like to, we'd be happy to. You folks used up your time, but go ahead. Just a brief rebuttal. Thank you very much, Your Honors. The government indicates that but for a breach by Mr. Aranda. However, in the brief, and I would like to just emphasize here, that the court itself recognized that Mr. Aranda had given the government substantial assistance, and there was a meeting or several meetings and continued assistance by Mr. Aranda from December 2005 until February of 2007. In our excerpts of records at page volume 1, pages 94 to 98, there are itemization and enumerations of the assistance and the significant information that was provided. So there is the promise by the government of security that was never provided to Mr. Aranda, and at some point in the facility where he was placed, contrary to what the government had promised, he had been assaulted. And that appears also in our brief and in declarations in our excerpts of record. I would submit it on that. Thank you, counsel. The case was targeted as submitted. We'll stand in recess until about 10.15.
judges: Scullin, Silverman, Graber